**BARCLAY DAMON LLP**
Janice B. Grubin
Ilan Markus
1270 Avenue of the Americas, Suite 2310
New York, New York 10020
Telephone: (212) 784-5800
jgrubin@barclaydamon.com
imarkus@barclaydamon.com
*Counsel for Defendants Debtor and*
*Balestriere Fariello*

**BALESTRIERE**
John G. Balestriere
28 Liberty Street, Sixth Floor
New York, NY 10005
Telephone: (212) 540-7361
john.balestriere@balestrierefirm.com
*Counsel for Defendants Balestriere Fariello and*
*Balestriere Law Firm PLLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>JOHN G. BALESTRIERE,<br><br>                Debtor. | Case No. 24-11422-lgb<br><br>Chapter 7 |
| PRAVATI CAPITAL, LLC,<br><br>                Plaintiff,<br>     v.<br><br>JOHN G. BALESTRIERE, BALESTRIERE PLLC dba BALESTRIERE FARIELLO, and BALESTRIERE LAW FIRM PLLC,<br><br>                Defendants. | Adversary Case No. 25-01110-lgb |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF DEBTOR'S AND THE FIRMS' MOTION TO DISMISS COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT AND RELEVANT BACKGROUND ....................................... 1

    Series of Irrelevant Assertions – Often False – Made in Opposition (and
    not in the Complaint) ...................................................................................................... 3

ARGUMENT ..................................................................................................................... 5

I. PRAVATI'S § 523 CLAIMS ARE BARRED AND MERITLESS ......................................... 5

    A. Arbitration and Judgment Confirmation Preclude Relitigation of Fraud ......................... 5

    B. Debt Is a Dischargeable Contractual Obligation, Not a Fraud-Based Claim ................. 8

    C. Count VI Under § 523 Must Be Dismissed As It Is Not Related to any
    Debt to Pravati ............................................................................................................ 10

II. PRAVATI'S § 727 CLAIMS FAIL AS A MATTER OF LAW ........................................... 11

    A. Pravati Does Not and Cannot Plead Fraud with Particularity, Warranting
    Dismissal of Count I, Count II, and Count III ................................................................. 11

    B. Formation of BLF and Former BF Clients Hiring BLF Does not Warrant
    Denial of Discharge, Requiring Dismissal of Count I ..................................................... 12

    C. Discovery Complaints Are Waived and Cannot Be Repurposed into § 727
    Claims, Warranting Dismissal of Count II ...................................................................... 14

    D. There Was No Disbursement of Any Funds Set Aside Pursuant to this
    Court's March 5, 2025 Order, Warranting Dismissal of Count III .............................. 15

III. THE ALTER EGO AND ASSET TRANSFER ALLEGATIONS FAIL ............................... 16

    A. There Was No Impermissible "Transfer". Clients Are Not Collateral and
    Were Free to Retain BLF Under New Agreements ........................................................ 16

CONCLUSION ................................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**                                                                  **Page(s)**

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) ........11

*Geron v Robinson & Cole LLP*, 476 BR 732 (S.D.N.Y. 2012) ....................................17

*In re Borders Group, Inc.*, 453 B.R. 459 (Bankr. S.D.N.Y. 2011).............................14

*In re Dana Corp.*, 358 B.R. 567, 581 (Bankr. S.D.N.Y. 2006) ..................................14

*In re Kressner*, 206 B.R. 303 (Bankr. S.D.N.Y. 1997)................................................9

*In re Thelen LLP,* 2014 NY Slip Op 4879, 24 N.Y.3d 16, 995 N.Y.S.2d 534,
20 N.E.3d 264 ..........................................................................................................17

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993)....................................9

*Murphy v. Snyder (In re Snyder)*, 939 F.3d 92 (2d Cir. 2019) ....................................

*Myer's Lawn Care Servs. v Fragala (In re Fragala)*, 645 BR 488 (Bankr.
E.D.N.Y. 2022) .........................................................................................................5

*Reply All v. Gimlet Media, Inc.,* Case No. 1:15-cv-049590- WFK-PK .....................6, 7, 8

*Rupert v. Krautheimer (In re Krautheimer)*, 241 B.R. 330, 335 (Bankr.
S.D.N.Y. 1999) .........................................................................................................9

*Sanders v. New York*, 692 F. Supp. 308, 313 (S.D.N.Y. 1988) ..................................11

*Stone v. Prudential Financial, Inc., et al*, Case No. 2:21-cv-14610 ..........................7

*Weir v Montefiore Med. Ctr.*, 2025 U.S. App. LEXIS 1563, No. 24-1527 (2d Cir.
Jan. 24, 2025)...........................................................................................................5

*White Lilly LLC and Jonathan A. Bernstein v. John G. Balestriere, et al.,*
American Arbitration Association, Case No. 01-18-0003-5131 ................................3

*Xiao v United States Dep't of Educ. (In re Xiao)*, 2025 Bankr LEXIS 2160,
Nos. 22-11540 (JLG), 24-01311 (JLG)) (Bankr. S.D.N.Y. Aug. 30, 2025)................10


**Authorities**                                                            **Page(s)**

Federal Rules of Bankruptcy Procedure Rule 2004....................................................3, 4, 11, 15

Federal Rules of Civil Procedure Rule 9(b)................................................................11

United States Code Title 11 Section 363(c)................................................................14

United States Code Title 11 Section 523 ....................................................*passim*

United States Code Title 11 Section 523(a)(2)(A) ......................................................9

United States Code Title 11 Section 523(a)(6)............................................................9, 10

United States Code Title 11 Section 727 ....................................................................11, 15

**Authorities (continued)**                                                    **Page(s)**

United States Code Title 11 Section 727(a)(2)...........................................................11

United States Code Title 11 Section 727(a)(3)...........................................................11

United States Code Title 11 Section 727(a)(6)...........................................................14


**Other**                                                                       **Page(s)**

E. Allan Farnsworth, Contracts § 12.8 at 874-75 (2d ed. 1990)..................................9

## **PRELIMINARY STATEMENT AND RELEVANT BACKGROUND[1]**

Nothing in the many papers of Pravati Capital, LLC ("Pravati") submitted in opposition to Debtor's and the Firms' Motion to Dismiss (Dkt. No. 4, "Motion to Dismiss") Pravati's Adversary Complaint (Dkt. No. 1, the "Complaint"), nor even in their opposition (Dkt. No. 11, the "Opposition")—where Pravati makes generally false, mostly already disproved, and frequently irrelevant allegations—undermine certain unassailable realities which warrant granting the Motion to Dismiss in its entirety.

First, Pravati's debt against Old Firm Balestriere Fariello ("BF") and, thus, by way of a contract for a personal guarantee by John G. Balestriere ("Debtor") against Debtor, is for a breach of contract only (see Final Award, MTD Ex. K, Dkt. No. 4-12, "the Breach of Contract Judgment")[2]. It is thus dischargeable. In its Opposition Pravati rehashes irrelevant, and overwhelmingly disproven factual assertions, in some cases about supposed events which, even if true, took place more than a decade ago, notably making many allegations it does not include in its Complaint (perhaps because Pravati did not want to stand behind such allegations in an actual pleading). Yet, all of these facts were or could have been asserted in the Arbitration where Pravati lost *entirely* on any of its several claims sounding in fraud or malfeasance. As such, collateral estoppel of the Breach of Contract Judgment, which Pravati itself sought to confirm, without challenge to its across-the-board losses on any fraud claims, and which Pravati has now domesticated in New York, requires that Debtor's personal guarantee of BF's debt to Pravati—the very reason Debtor filed a bankruptcy petition—respectfully must be discharged. Pravati's Count

---

[1] All terms are as defined in Debtor's and the Firms' Motion to Dismiss Pravati's Complaint, *Pravati Capital, LLC, v. John G. Balestriere, et al.*, Case No. 25-01110-lgb (Dkt. No. 4), dated August 6, 2025, unless otherwise defined herein. Debtor provides some definitions for the Court's convenience.

[2] Exhibits referred to herein as "MTD Ex. X" are attached to the Motion to Dismiss (Dkt. No. 4); any other referenced exhibits are attached to this memorandum.

IV, Count V, and Count VI claims challenging the dischargeability of this debt must be dismissed with prejudice.

Second, nothing Pravati asserts in its Opposition regarding conduct since this bankruptcy began—which is generally benign, and with any allegations of misconduct undermined by documents Pravati sought and has—rises to the level of the egregious misconduct which would warrant the extraordinary punishment of denying Debtor his discharge of his debts, including the Pravati debt. As such, Pravati's Count I, Count II, Count III and—to the extent Pravati appears, bizarrely, to also make a claim under Section 523 regarding post-petition conduct—Count VI challenging dischargeability and discharge must be dismissed as well.

Finally, while Pravati can and has sought to enforce judgment against BF, even if it has engaged in litigation misconduct as shown in the pending related stay motion (Dkt. No. 139), and even though Pravati almost certainly shall continue to harass former BF clients, and bring what will are likely be baseless claims against Debtor's New Firm Balestriere Law Firm PLLC ("BLF", and, together with BF, the "Firms"), the final Count VII for "Declaration of Alter-Ego Liability" respectfully is not properly before this Court, and anyway fails on its own terms. Even accepting Pravati's allegations, BF, BLF, and Debtor are separate legal entities. And Pravati's key allegation in support of some improper conveyance—that "[a] law firm's principal assets are its clients and the matters it is handling" (Opposition at 15)—are simply not true: a law firm's assets are its accounts receivable from fees; it does *not* own its own clients, and its client matters of course belong to those clients (not the lawyers representing them). As such, any hourly-fee client which at one time hired BF (and was billed by and either owes or owed BF for fees and services, or has paid BF for those services) and then hired BLF, a separate law firm (making a choice every client has a right to make) did nothing wrong. More to the point, a client choosing to hire New Firm BLF

(while still owing fees for whatever services were rendered to that client by the Old Firm BF) did not result in any "transfer," let alone an impermissible one, from BF to BLF as Pravati continues to pretend sincethose fees remain with BF as its AR. The alter ego claim should be dismissed with prejudice.

***Series of Irrelevant Assertions – Often False – Made in Opposition (and not in the Complaint)***

Pravati's desperation is clear in its devotion of page after page in its Opposition to facts which are irrelevant for several reasons: they are generally allegations not in the Complaint; they often regard events which, even if true, took place a decade or more ago; they have nothing to with the questions of the dischargeability of Pravati's debt, nor whether Debtor's conduct warrants a discharge; and, worst of all, most of the allegations are not simply false, but either documents Pravati has in its possession or findings of the Arbitrator show them to be false. Simply a few examples of Pravati's irrelevant and misstated allegations follow:

1. Pravati's Opposition misleadingly invokes a decade-old dispute with Counsel Financial as evidence of a "pattern." (Opposition at 13-14). That 2014 matter, which was publicly filed, and known to Pravati before it entered its own agreements, was resolved within months after initiation with Counsel Financial receiving more than three times its $700,000 moneys loaned back (any higher amounts cited are for a refinance, not moneys provided to BF), though the amount BF paid back is less than Counsel Financial sought as that company engaged in misconduct with BF resulting in claims by BF. Far from suggesting fraud, this demonstrates Debtor's willingness and ability to resolve disputes responsibly.

2. Regarding *White Lilly LLC and Jonathan A. Bernstein v. John G. Balestriere, et al.,* American Arbitration Association, Case No. 01-18-0003-5131 (the "Bernstein Matter"), Pravati misrepresents what the arbitrator in that 2021 arbitration found (in a matter which had nothing to do with Pravati and where the arbitrator found for BF and against the non-paying former BF client on all of that former client's claims) (Pravati Opposition at 4). The 2023 Arbitrator in fact rejected six bases for default, sustaining only two, and finding narrow defaults sounding in contract regarding BF not including information in monthly updates—a fact which Pravati did not challenge at the time, likely because the information not included in the monthly updates *was* provided to Pravati in phone calls, Zoom meetings, and other correspondence.

3. Pravati's Opposition devotes nearly ten pages to purported discovery obstruction, claiming Debtor "refused to produce communications" and failed to comply with Rule 2004 orders.

Yet, the record says otherwise: Debtor, BF, and BLF produced thousands of pages of documents, including complete bank records through January 2025, and sat for a full-day Rule 2004 deposition—and Pravati seems not to understand that, notwithstanding the size of some of the cases BF handled, it was a small law firm, with no dedicated accounting staff, whose financial records were essentially the bank statements which Pravati has going back seven years. (The Firms' March 31 Production, MTD Exhibit AA, Dkt. No. 6). At the Court's instruction, Pravati was required to move to compel if it believed production was incomplete. (Motion to Dismiss at 31). It never did.

4. Pravati recycles claims of outside encumbrances on which claims it lost in the underlying Arbitration, including of supposed funding by litigation funder Legalist. (Complaint at ¶ 176). Yet, as found by the Arbitrator, no outside funder ever financed BF's fee interest while it worked with Pravati. (Breach of Contract Judgment at ¶ 132). And the "mutual non-disclosure agreement" which Pravati references (see Opposition at 19) was not between BF and Legalist, but rather between BF's client and the litigation funder, which created no financial obligation by BF, no lien on BF's cases or receivables, and no encumbrance on Pravati's collateral.

5. Pravati falsely asserts that Debtor somehow interfered with Pravati's ability to receive any interest from BF, complaining, it seems, that as Pravati is trying to destroy his livelihood and harass his family Debtor should nonetheless work for Pravati's interests for free. While Pravati finally seems to admit that BF has maintained its liens on any contingency fee assets (Opposition at 9) and has not transferred such interests to BLF, nor Debtor, nor any other entity (even if Pravati seems to complain that other law firms now represent former BF contingency fee clients) (Opposition at 28), Pravati multiple times references settlement discussions claiming Debtor sought to be paid millions to work for Pravati. The actual settlement entreaties involved smooth transitions for BF clients and no windfall for Debtor—who through this bankruptcy likely lost well over $10 million over time that BF fees could have generated above and beyond anything owed to Pravati. See, e.g., (Memorandum of Understanding, dated May 3, 2025, Exhibit A).

Pravati has not sought leave to amend its Complaint to make these allegations—only made as lawyer argument—but no amendment would transform technical reporting breaches (that only gave rise to a breach of contract) or Pravati's misrepresentations about a more than decade old, unrelated disputes, or discovery it never sought to compel, or encumbrances which never took place into a basis to deny dischargeability of the debt to Pravati which Debtor has guaranteed.

Given Pravati's relentlessness, it is nearly certain that litigation between Pravati and BF and likely BLF shall continue. But the question respectfully before this Court is whether Pravati has made out claims to reject dischargeability of BF's debt which Debtor guaranteed, or to deny

Debtor his fresh start discharge. Pravati has not done so. Debtor and the Firms ask this Court to grant its Motion to Dismiss all claims in Pravati's Complaint, with prejudice, paving the way for Debtor to be granted a discharge from all debts, including the Breach of Contract Judgment debt he personally guaranteed to Pravati.

**ARGUMENT**

**I. PRAVATI'S § 523 CLAIMS ARE BARRED AND MERITLESS.**

    **A.** **Arbitration and Judgment Confirmation Preclude Relitigation of Fraud.**

All of Pravati's fraud and misconduct *allegations* were raised in the Arbitration and rejected as seen in the attached chart which notes that any allegations Pravati makes in support of its Section 523 claims here, Pravati (1) asserted in the Arbitration, (2) used as a basis for a claim sounding in fraud or malfeasance in that Arbitration, and (3) *lost* in that Arbitration (see Pravati Allegations Chart, Exhibit B). Issue preclusion bars relitigation. "It is well settled that preclusion principles apply in bankruptcy proceedings . . . and that collateral estoppel may be used to establish the nondischargeability of a debt . . .." *Murphy v. Snyder (In re Snyder)*, 939 F.3d 92, 100 (2d Cir. 2019) (citations omitted); *Weir v Montefiore Med. Ctr.*, 2025 U.S. App. LEXIS 1563, at *6, No. 24-1527 (2d Cir. Jan. 24, 2025) ("Under both federal common law and New York law, issue preclusion bars parties from relitigating an issue of fact or law when (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party raising the issue had a full and fair opportunity to litigate the issue in the prior proceeding; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.") (quotations omitted). Pravati embraced the Breach of Contract Judgment when it sought and obtained judgment confirmation; it cannot now disavow those findings it does not like (regarding the absence of fraud) while embracing those it wants to prosecute (regarding

5

the Breach of Contract Judgment). Count IV, Count V, and Count VI under Section 523 in the Complaint must be dismissed with prejudice.

Understanding this, Pravati in its Complaint and then its Opposition willfully misrepresents the record in a failed attempt to make the Breach of Contract Judgment into a fraud based finding, which it is not. For example, referring to the matter of *Reply All v. Gimlet Media, Inc.,* Case No. 1:15-cv-049590- WFK-PK, (the "Reply All Matter"), Pravati's Opposition insists "[t]he Arbitration Award unambiguously determined that Debtor made false representations to Pravati regarding the merits of the Reply All Matter." It then argues that Debtor attempts to "manipulate the plain language" of the Breach of Contract Judgment by denying any false representations. (Pravati Opposition at 10). However, it is Pravati that mischaracterizes the language of the Breach of Contract Judgment. The Arbitrator found:

> [Pravati] has shown that BF defaulted under clause 2(e)(xiv) and clause 15 of the 2020 [A]greement because it inaccurately represented that the *Reply All* case was meritorious. This conclusion *does not presume BF's lawyers subjectively knew the case lacked merit when the 2020 Agreement was entered*, but instead reflects that the inaccuracy of the representation was established by the U.S. District Court's determination in April 2021 that the case was meritless from the outset.

(Breach of Contract Judgment at ¶ 130)(emphasis added).

Pravati seizes on the phrase "inaccurately represented" to argue that the Breach of Contract Judgment proves fraud. But the Arbitrator drew a critical distinction: while a later court finding meant that the Arbitrator deemed this an inaccuracy - that is, a mistake, not a misrepresentation or material omission—the Arbitrator explicitly found that neither BF lawyers nor Debtor *knew* the case lacked merit or acted with fraudulent intent. The Arbitrator explained "that the inaccuracy was established by the U.S. District Court's determination in April 2021"—a ruling issued well after BF had entered into the 2020 Agreement with Pravati on September 17,

2020. Indeed, the Reply All Matter was one of several contingency cases BF undertook *before* entering into any agreement with Pravati, and both BF and Debtor believed in good faith that the case had merit (otherwise they would not have represented the clients there on a contingency fee basis). The Breach of Contract Judgment explicitly confirms that no subjective bad faith was found with regards to the Reply All Matter.

Pravati's Opposition again mischaracterizes the Breach of Contract Judgment in the matter of *Stone v. Prudential Financial, Inc*., et al, Case No. 2:21-cv-14610 (the "Prudential Matter"), claiming it shows concealment "marked by deception and bad faith." (Opposition at 6). This is wrong. The Arbitrator carefully distinguished the events surrounding this dismissal of the Prudential Matter, rejecting Pravati's claim then and now that either dismissal amounted to a "material adverse litigation development" (which in any event would have been a breach of contract, *not* a fraud) holding: "[Pravati] has not shown that BF defaulted under clause 2(j) (Material Adverse Litigation Development) with regard to the November dismissal of the complaint in" the Prudential Matter.(Breach of Contract Judgment at ¶ 135).

More to the point, Pravati made these allegations in support of fraud claims in the Arbitration– related to these very two matters—and *lost* on those claims. Regarding the Reply All Matter, Pravati alleged that BF "[c]ommitted fraud by inducing Pravati to fund millions of dollars to pursue meritless cases" and that "[Debtor] was fully aware of the shortcomings of the case" in its pre-hearing papers in the arbitration (Pravati Statement of Position, dated December 5, 2023 ("Pravati SOP"), Exhibit C at 18: 6-7; Pravati SOP at 20: 6-7; and then the Arbitrator expressly found Pravati failed to establish that claim, noting that Pravati itself understood that the kind of claim was challenging (as Pravati had even performed due diligence on the ReplyAll case and never claimed it was meritless before the Arbitration) finding that Pravati had not proved "that BF

or [Debtor] committed fraud, by inducement or omission, with respect to the identified matters." The U.S. District Court's April 2021 ruling does not establish that BF or its attorneys intentionally misrepresented or concealed information about the merits of the Reply All case in communications with [Pravati] prior to the fee award. Prior to the adverse ruling on the motion for summary judgment, [John Balestriere] had engaged in preliminary settlement discussions in the $1 million range [with the adversary in the ReplyAll matter]. BF *and Pravati* recognized that intellectual property litigation is difficult, and the outcome of the summary judgment motion was uncertain." (Breach of Contract Judgment at ¶ 159; Breach of Contract Judgment at ¶ 65).

Despite this, Pravati realleges its claim of fraud in this Court: "The Debtor made false representations to Pravati about the Reply All case upon which Pravati relied to provide litigation funding to the Debtor and his alter-ego law firm. The Debtor knew these representations were false and were intended to deceive Pravati." (Complaint at ¶¶ 148-149). But ignoring this earlier ruling against it is par for the course with Pravati: as seen in the chart attached as Exhibit B, the overlap between the arbitration claims and the present allegations is nearly exact, and each was conclusively resolved *against* Pravati in the Breach of Contract Judgment.as to fraud-based claims. This is exactly why there is collateral estoppel – to prevent a bad actor like Pravati from losing in one forum and trying to relitigate in another. Collateral estoppel warrants dismissal of Counts IV, V, and VI regarding the underlying BF debt which Debtor personally guaranteed.

### B.  The Debt Is a Dischargeable Contractual Obligation, Not a Fraud-Based Claim.

The Arbitrator found no claims based on material omissions or fraud and, in fact, did only make findings that were technical defaults, giving rise to the Breach of Contract Judgment, notwithstanding Pravati characterizing this description as "wholly disingenuous". (Opposition at 6). The Breach of Contract Judgment based on the Arbitrator award is clear: the Arbitrator ruled

for Pravati *only* on Pravati's Arbitration for breach of contract. (See Breach of Contract Judgment at ¶¶ 159, 163, 167, 170). The Arbitrator even denied Pravati any punitive damages, finding: "[Pravati] is not entitled to punitive damages. It has not prevailed on its tort claims and it has not proved that BF or [Debtor] acted with the requisite evil mind to support an award for punitive damages." (Breach of Contract Judgment at ¶ 173). Breach of contract—even with inaccurate statements—does not equate to fraud for purposes of § 523. *See, e.g., Myer's Lawn Care Servs. v Fragala (In re Fragala)*, 645 BR 488, 499 (Bankr. E.D.N.Y. 2022) ("If proving that a debt arose from an unfulfilled promise were sufficient to establish a claim under § 523(a)(2)(A), then every breach of contract claim would be non-dischargeable").

"A contract may be breached for legitimate business reasons. *See generally* E. Allan Farnsworth, Contracts § 12.8 at 874-75 (2d ed. 1990). "Contractual breach, in and of itself, does not bespeak fraud, and generally does not give rise to tort damages." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993); *see also Rupert v. Krautheimer (In re Krautheimer)*, 241 B.R. 330, 335 (Bankr. S.D.N.Y. 1999) ("The finding of breach of contract by the Corporation has no bearing, in itself, on whether Krautheimer committed a 'willful and malicious injury' upon Rupert. And, of course, breach of contract is not a basis for non-dischargeability [against Krautheimer] in section 523(a)(6) actions." *Krautheimer*, 210 B.R. at 53 (citing *In re Kressner*, 206 B.R. 303 (Bankr. S.D.N.Y. 1997))."

Pravati's effort to repackage contractual breaches as nondischargeable debt contradicts the Breach of Contract Judgment it chose to confirm. Count IV, Count V, and Count VI must be

dismissed with prejudice as regarding a breach of contract judgment, which falls under no exception listed under Section 523.

**C.** **Count VI Under § 523 Must Be Dismissed As It Is Not Related to any Debt to Pravati.**

Count VI of the Complaint independently must be dismissed as not even regarding any debt which Debtor could owe to Pravati as required by the bankruptcy section under which Pravati sues. Section 523 claims may only address a "debt" which a debtor *already has* upon filing bankruptcy. *Xiao v United States Dep't of Educ. (In re Xiao)*, 2025 Bankr LEXIS 2160, at \*29, Nos. 22-11540 (JLG), 24-01311 (JLG)) (Bankr. S.D.N.Y. Aug. 30, 2025) (a discharge in bankruptcy extends only to debts that arose before the date of the order for relief).

Indeed, while Pravati asserts that Debtor "acted willfully and maliciously with intent to cause harm to Pravati", and "willful and malicious injury" is in fact referenced in Section 523(a)(6), Pravati ignores the context in which the requirements of such misconduct must be proved. Section 523 provides that a successful claim under that section would mean that a "discharge . . . does not discharge an individual debtor *from any debt* . . . (6) for willful and malicious injury by the debtor to another entity or to the property of another entity." (emphasis added). The section does not provide some general claim for relief for what a creditor considers to be "willful and malicious" conduct, alone warranting dismissal of this claim.

And in any event, as noted above, the allegations in support of this claim regard conduct which is neither malicious, nor intended to cause harm to Pravati, nor even did. These allegations include that Debtor made "Transfers" when former clients of BF hired BLF (Complaint at ¶ 171), had BF move to withdraw when BF, without employees, could no longer practice law nor represent clients (Complaint at ¶ 172), and then Debtor later represented clients at BLF (Complaint at ¶ 173). The pleaded assertions do not support any claim challenging dischargeability, and thus must fail.

But Count VI independently must be dismissed as it purports to encompass alleged postpetition debt in addition to the actual preptition debt which, by way of a personal guarantee, Debtor does owe to Pravati in the Breach of Contract Judgment.

## II. PRAVATI § 727 CLAIMS FAIL AS A MATTER OF LAW.

### A. <u>Pravati Does Not and Cannot Plead Fraud with Particularity Warranting Dismissal of Count I and Count II.</u>

Pravati does not plead fraud with particularity – since it cannot – alone warranting dismissal of the Section 727(a)(2) and (a)(3) claims as they are premised on fraud and, thus, must be pleaded with particularity. As noted in the Motion to Dismiss, in the Complaint Pravati relies almost entirely on vague accusations made "upon information and belief" 44 times in 117 factual paragraphs. This sort of conclusory pleading falls well short of Rule 9(b). Courts uniformly dismiss § 727 claims where fraud is alleged in such generalities. "Allegations of bankruptcy fraud [such as under Sections 523 and 727], like all allegations of fraudulent predicate acts, are subject to the heightened pleading requirements of [Rule] 9(b)." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004). Lawyer argument in a motion to dismiss opposition does not cure this fatal error. "[C]ounsel cannot amend the complaint by affidavit on a motion to dismiss. Accordingly, the second proposed claim against the City cannot withstand a motion to dismiss for the same reason that the prior claim cannot withstand a motion to dismiss, namely, a lack of specificity in pleading." *Sanders v. New York*, 692 F. Supp. 308, 313 (S.D.N.Y. 1988). Any claims based on fraud, including Count I and Count II challenging Debtor's discharge, must be dismissed**.**

**B. Formation of BLF and Former BF Clients Hiring BLF Does not Warrant Denial of Discharge, Requiring Dismissal of Count I.**

Pravati's actual allegations about Debtor's conduct post-petition (as opposed to their high volume characterizations about such conduct, or their pages of irrelevant lawyer made—not Pravati pleaded—misrepresentations in their Opposition) simply do not support a denial of discharge even if they are all true. When the hyperbole and characterization and illogical leaps are set aside, in support of its first claim Pravati asserts the following facts, none of which rise to the level of egregious misconduct Pravati would have to prove for Debtor not to obtain his discharge:

- Debtor formed a new law firm (Complaint at ¶ 120)

- there were purported "Transfers" because former BF clients hired BLF (Complaint at ¶ 121),

- because BF no longer had any employees or resources Debtor caused BF to move to withdraw from matters in which BF had a contingency fee interest (Complaint at ¶¶ 125-127)

- there was some – completely unspecified – "failure preserve or keep proper books and records" (Complaint at ¶ 130), and

- Debtor (after discussion with counsel) had BF pay to Debtor his only compensation at the time, $55,000 over four months, while he and colleagues at BLF did many hundreds of hours of work for BF to ensure it conducted an orderly wind down for clients.

Pravati goes further with lots of adverbs. And, in particular in its Opposition, in an apparent, impermissible attempt to supplement its Complaint, its lawyers heap on completely irrelevant allegations, and, at times, false allegations of events of a decade ago or more. But the well pleaded allegations, summarized above, do not make out a challenge to discharge.

Creating a new firm post-petition does not give rise to a challenge to discharge. In close consultation with counsel, Debtor filed a petition for Chapter 7 bankruptcy on Friday, August 16, 2024 (the "Petition Date"). Debtor and colleagues did not take steps to form the New Firm until

Monday, August 19, 2024, and the New York State Department of State did not finalize formation until August 28, 2024. Simple formation of an entity post-petition cannot support denial of discharge, warranting denial of Count I.

Clients choosing to hire Debtor's new law firm does not give rise to a challenge to discharge. The Opposition claims Debtor "transferred BF's non-contingency cases (which were included in Pravati's collateral), from BF to BLF for no consideration" (Opposition at 8) but as established in the Motion to Dismiss (Motion to Dismiss at 18), BF retained its liens on contingency and hourly-rate receivables, the latter generated from "hourly" clients who later may have engaged BLF under new agreements, as is their right. Clients and cases are not law firm property. The only BF assets transferred were office furniture and computers, which BLF purchased for value.

Debtor responsibly causing BF to move to withdraw (when that firm no longer had resources) and, in consultation with bankruptcy and ethics counsel, appropriately having an engagement letter between BLF and BF (for which BLF has not been paid one dollar) does not give rise to a challenge to discharge. Pravati criticizes Debtor for not aggressively enforcing liens, stating "Debtor has refused to lift a finger to enforce these liens, and he has refused to provide information solely within his possession necessary to enforce the liens." (Opposition at 15) (whatever exactly that means or what Pravati would have Debtor do without compensation). But the record shows Debtor repeatedly updated Pravati, offered to assist, and reminded them of approaching statutes of limitation. (*See, e.g*., Email from Ilan Markus to Pravati's Counsel, dated January 10, 2025, Exhibit D; Statutes of Limitations Letter, dated July 28, 2025, Exhibit E).

Debtor being paid from August 19 (after the petition was filed) through December 23, 2024 an amount of $55,000, when Debtor (and, at his expense, his new law firm colleagues)

13

devoted many hundreds of hours to an orderly wind down of BF and related litigation work, does not give rise to a discharge claim. All payments were not only documented but authorized and documented by Debtor's and BF's counsel. They were not improper "distributions" but legitimate compensation. For example, in *In re Dana Corp.*, 358 B.R. 567, 581 (Bankr. S.D.N.Y. 2006; *"Dana II"*), the Court held that a long-standing compensation program, which was not significantly altered in connection with the debtor's reorganization, could be categorized as an "ordinary course" transaction subject to Section 363(c) of the Bankruptcy Code. Similarly, in *In re Borders Group, Inc.*, 453 B.R. 459, 471-72 (Bankr. S.D.N.Y. 2011), the Court found that compensation of "insiders" for the purpose of compensating them for work in the ordinary course of the debtor's business was permitted in the sound business judgment of the debtor.

In fact, BLF—including Debtor and his colleagues—devoted approximately 510 hours from late August until the end of 2024 to BF's dissolution and representation as reflected in contemporaneously maintained time records; this year BLF employees, including Debtor, have spent many hundreds of hours more addressing a myriad of issues raised in its representation of BF, including in dissolution and litigation (both in and outside the bankruptcy). Yet, BLF has not only not gone unpaid beyond any payments to Debtor in late 2024 for this work, but agreed to perform the work at a 50 percent discounted rate. Pravati's claim that Debtor arranged for BF to retain BLF to ensure "that any monies that come into BF would be paid directly to himself through his 'new' firm BLF" (Opposition at 13) collapses in the face of the facts: BLF has not profited at all.

### C. Discovery Complaints Are Waived and Cannot Be Repurposed into a § 727(a)(6) Claim, Warranting Dismissal of Count III.

Pravati does not have a Section 727(a)(6) claim for not obtaining discovery it wishes it exists, and where it never moved to compel, warranting dismissal of Count III. While Pravati

devotes pages of its Opposition to discovery grievances, it ignored this Court's directive that if Pravati believed production was deficient, it must move to compel. (February 19 Hearing Transcript, MTD Exhibit GG, Dkt. No. 4-32). It never did. (Motion to Dismiss at 22). Having chosen not to pursue the proper remedy, Pravati cannot repackage its tactical choice as grounds for denial of discharge. The record anyway demonstrates compliance: Debtor, BF, and BLF produced thousands of pages of records and sat for a full Rule 2004 deposition. (Debtor's Response to Pravati's Letter to Court re Discovery, dated June 24, 2025, MTD Ex. SS, Dkt No. 4-44). Discovery complaints are now waived, and cannot be bootstrapped into a § 727 claim, warranting dismissal, with prejudice.

### D. There Was No Disbursement of Any Funds Set Aside Pursuant to this Court's March 5, 2025 Order, Warranting Dismissal of Count III.

Further, Pravati's allegations in support of Count III – that "Debtor and his alter-ego law firms . .. disburs[ed] or earmark[ed] for payment to third parties' funds over which Pravati has a lien without the determination by or permission from the Bankruptcy Court" is flat out baseless. While this Court is permitted to accept Pravati's "well pleaded" allegations as true, there is nothing well pleaded about accusing not only Debtor, but also his lawyers at Barclay Damon of violating a Court order—one which Debtor through counsel actually suggested to the delighted surprise of Pravati's counsel. On February 19, 2025 Debtor's counsel noted that if any fees from any settlements were received by BF they would be placed in escrow with Barclay Damon, something which Pravati agreed to, and which resulted in the March 5 Order requiring Debtor to place settlement proceeds in escrow. (see February 19 Hearing Transcript, MTD Ex. GG, Dkt. No. 4-32); March 5, 2025 Order, MTD Ex. CC, Dkt. No. 4-28). And so the limited funds which Barclay Damon has maintained in escrow have remained. When this was challenged—without any basis—by way of a letter from Pravati on June 13, 2025, Barclay Damon provided correspondence on

June 13, 2025 and June 18, 2025 to confirm. (Letter from Janice Grubin to Ira Zaroff, MTD Ex. OO, Dkt. No. 4-40). But this didn't stop Pravati from accusing not just Debtor, but Debtor's counsel, of violation of a Court order, and Barclay Damon of escrow violations. As noted before, Pravati simply does not stop in making any accusations it wishes. But here it does not come close to meeting its pleading burden, warranting dismissal with prejudice of the particularly maliciously pleaded Count III.

## III. THE ALTER EGO AND ASSET "TRANSFER" ALLEGATIONS FAIL.

### A. There Was No Impermissible "Transfer". Clients Are Not Collateral and Were Free to Retain BLF Under New Agreements.

The "Declaration of Alter Ego" claim must be dismissed as nothing which Pravati asserts gives rise to any alter ego liability, to the extent the final Count VII respectfully even belongs in this action. Again and again, Pravati argues that Debtor "transferred" clients from BF to BLF. (Complaint at ¶ 32). But law firm clients are *not* the property of a law firm—they may choose their own counsel.

> A pending client matter is not an ordinary article of commerce. Contrary to DSI, an hourly fee matter is not akin to "a Jackson Pollack [sic] painting" that a departing attorney "rip[s] off the wall of the reception area." ***The client***, ***not the attorney***, ***moves a matter to a new firm***. Thus, the attorney-client relationship is unique, and applying Stem to hourly fee legal service contracts would undermine it. New York law does not countenance such a result. In *Cohen*, the New York Court of Appeals drew on an ethics opinion from the New York County Lawyers' Association to emphasize New York's commitment to client autonomy: "Clients are not merchandise. Lawyers are not tradesmen.... An attempt, therefore, to barter in clients, would appear to be inconsistent with the best concepts of our professional status." Cohen,

> 75 N.Y.2d at 98 (internal quotation marks omitted). This policy applies just
> as forcefully to client matters.

*Geron v Robinson & Cole LLP*, 476 BR 732, 742 [S.D.N.Y. 2012) (emphasis added and citations omitted).

Therefore, any clients of one firm subsequently hiring another firm does not represent any transfer of interests between such firms. *Id. See also In re Thelen LLP,* 2014 NY Slip Op 4879, ¶ 3, 24 N.Y.3d 16, 22, 995 N.Y.S.2d 534, 537, 20 N.E.3d 264, 267 ("law firm does not own a client or an engagement"). And Pravati does not deny that BF retained its liens—that is, retained its fee interest—on all contingency cases and receivables from hourly fee cases generated prepetition, and no BF receivables have been paid to BLF. Even accepting Pravati's allegations as true, there was no improper "transfer"—indeed, no transfer at all—and nothing to give rise to alter ego warranting dismissal of the alter ego claim.

In allegations made *outside* the Complaint Pravati complains of a former BF client who later hired BLF and then made a substantial retainer payment in September 2024 to BLF as supposed proof of "diversion." (Opposition at 26). But what Pravati does not assert in its Opposition—and does not plead in its Complaint—is that this client that once hired BF then later hired BLF pursuant to an engagement agreement which in fact BLF produced to Pravati in discovery. While this "diversion" allegation is not even included in Pravati's actual pleading, even if it was, and even if true, it is simply another example of a client who once hired BF and then later BLF – as that client is permitted to do, and without creating liability for BF or BLF. Count VII regarding Alter Ego, if, respectfully, even appropriately before this Court, must be dismissed, with prejudice.

There is no misconduct by a bankruptcy debtor starting a new business after filing a bankruptcy petition so he may earn compensation and provide for his family. Indeed, there can be

no dispute (and all documents show) that, after BF and Debtor consulted counsel, Debtor filed his bankruptcy petition on August 16, 2024 and then created BLF starting August 19, 2024, post-petition. (See U.S. Department of State Filing Receipt, MTD Ex. R, Dkt. No. 4-19). But this does not support any allegation of misconduct giving rise to alter ego liability or, indeed, any misconduct at all: when Pravati rejected genuinely years of discussion at a resolution between BF and Pravati, and, after months of discussion with ethics and bankruptcy counsel, Debtor decided he had to declare bankruptcy (and start at financial zero as the one time sole provider in his home) he started a new law firm in the hopes of earning compensation to take care of his family and "move on from the situation with Pravati." (Opposition at 39). Obtaining a job with another law firm when Pravati was relentlessly suing Debtor might have been impossible. And Debtor made his new firm completely independent of BF so that (ironically) there could be no legitimate argument that his new law firm had any financial interest in any of BF's fees, contingent or otherwise, since BLF did not nor does. None of this gives rise to liability for anything, warranting dismissal of the Count VII alter ego claim.

## CONCLUSION

Pravati appears committed to continued litigation, so whatever this Court decides Pravati almost certainly will continue to sue and bring court process against Debtor (once the stay is terminated), any law firm where he works, his former clients, and perhaps others. But in this Court the Bankruptcy Code applies, warranting Pravati's claim for Breach of Contract Judgment be deemed dischargeable and providing Debtor his fresh start, with no finding of alter ego liability, and a discharge of all his debts and with any disputes between any of these parties in the proper forum: a civil court.

Debtor's and the Firms' Motion to Dismiss should be granted and Pravati's claims should be dismissed in their entirety and with prejudice.

Dated:    September 18, 2025
           New York, New York

**BARCLAY DAMON LLP**

By*:*   */s/Janice B. Grubin*
Janice B. Grubin
Ilan Markus
1270 Avenue of the Americas, Suite 2310
New York, New York 10020
Telephone:  (212) 784-5800
jgrubin@barclaydamon.com
imarkus@barclaydamon.com
*Counsel for Defendants Debtor and*
*Balestriere Fariello*

**BALESTRIERE**

By*:*   */s/john G. Balestriere*
John G. Balestriere
28 Liberty Street, Sixth Floor
New York, New York 10005
Telephone: (212) 540-7361
john.balestriere@balestrierefirm.com
*Counsel for Defendants Balestriere*
*Fariello and Balestriere Law Firm PLLC*