UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 1:24-bk-11422 (lgb) |
| JOHN G. BALESTRIERE, | |
| Debtor. | Chapter 7 |
| PRAVATI CAPITAL, LLC, | |
| Plaintiff, | Adversary No. 25-01110 (lgb) |
| v. | |
| JOHN G. BALESTRIERE, *ET AL.*, | |
| Defendants. | |

### MEMORANDUM OPINION AND ORDER
### REGARDING DEFENDANTS' MOTION TO DISMISS

**APPEARANCES**

BARCLAY DAMON LLP
*Attorneys for Debtor*
1270 Avenue of the Americas
New York, NY 10020
By:   Janice Beth Grubin
       Ilan Markus

MORRITT HOCK & HAMROFF LLP
*Attorneys for Pravati Capital, LLC*
400 Garden City Plaza
Garden City, NY 11530
By:   Ira Zaroff
       Joseph Townsend

1

## PROCEDURAL HISTORY

On July 2, 2025, Pravati Capital, LLC ("Pravati" or "Plaintiff")[1] filed a complaint (the "Complaint") [ECF No. 1][2] against Defendants John G. Balestriere ("Balestriere"), Balestriere PLLC dba Balestriere Fariello ("BF") and Balestriere Law Firm PLLC ("BLF", together with Balestriere and BF, the "Defendants").  On August 6, 2025, the Defendants filed a Motion to Dismiss the Complaint (together with its accompanying memorandum of law, the "MTD") [ECF No. 4], supported by a declaration by Balestriere [ECF No. 5] and various exhibits [ECF No. 6], seeking to dismiss all seven counts in the Complaint.  On September 11, 2025, the Plaintiff filed a Memorandum of Law in Opposition (the "Opposition") [ECF No. 11] and declarations of Benjamin Pierce [ECF No. 12] and Ira Zaroff [ECF No. 13] in support of the Opposition.  On September 18, 2025, the Defendants filed a reply in support of the MTD (the "Reply') [ECF No. 15].  On September 25, 2025, the Court held a hearing, heard oral argument on the MTD, the Opposition and the Reply, and took the MTD under advisement.

After having reviewed the pleadings, including the Complaint, the declarations and exhibits, and applicable case law, and having considered the arguments of the parties, the Court grants the MTD in part and denies the MTD in part.  Specifically, the Court grants the MTD with respect to all counts in the Complaint with the exception of Count I, which shall survive dismissal.

## DISCUSSION

The Court must dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Bankruptcy Procedure 7012(b) "when a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 548 (2007).  A claimant's allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is not plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

### Count VII: Alter-Ego Liability or Piercing the Corporate Veil

With respect to Count VII, under applicable New York law, there is no independent cause of action for alter-ego liability or piercing the corporate veil. *Arco Acquisitions, LLC v. Tiffany Plaza, LLC*, 2021-08509 (2d Dept. 2024); *245 E. 19 Realty LLC v. 245 E. 19th Street Parking LLC*, 2024 N.Y. Slip Op. 00368 (1st Dept. January 30, 2024).  However, it is an available remedy which could be sought by a plaintiff in connection with an appropriate cause of action.  However, because the Court is dismissing each of the causes of action set forth in the Complaint except

---

[1] It is not clear why PIF (defined *infra*) is not a party to this Adversary Proceeding, given that the damages in the Final Award (as defined below) were awarded to PIF.  However, since no one raised this in the MTD, the Court will not address it further.  It is possible that PIF assigned the debt to the Plaintiff, although the Complaint does not address that.

[2] All ECF references herein shall correspond to the docket of Case No. 25-01110 – *Pravati Capital v. John G. Balestriere, et al*.

2

Count I, which seeks a denial of a discharge for Balestriere in the chapter 7 case under section 727 of the United States Bankruptcy Code ("Bankruptcy Code"), Count I represents the only cause of action for which remedies may be sought. The Court fails to see how imposing alter-ego liability or piercing the corporate veil could be an appropriate remedy for Count I. Thus, the MTD is granted with respect to Count VII.

### **Count I: Denial of Discharge Under § 727(a)(2)**

With respect to Count I, Plaintiff is seeking denial of a discharge under section 727(a)(2) of the Bankruptcy Code. The Court may deny a discharge if "the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, mutilated or concealed-(A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition." Bankruptcy Code § 727(a)(2).

In considering Count I, the Court must first determine if the Complaint adequately pleads that either property of the Debtor pre-petition, or property of the estate post-petition, has been transferred, removed, destroyed, mutilated or concealed. The first issue is whether BF and BLF's assets constitute "property of the debtor" or "property of the estate". There are cases where a debtor is the sole owner and/or had control over a corporation and the Court determined that the facts were sufficient for the property of the corporation to be considered property of the debtor or property of the estate. *See In re Levi*, 581 B.R. 733, 747 (Bankr. S.D.N.Y. 2017); *In re Robinson*, 595 B.R. 148, 156-57 (Bankr. S.D.N.Y. 2019); *In re Palermo*, 370 B.R. 599, 605 (Bankr. S.D.N.Y. 2007). Plaintiff has alleged that BF and BLF are owned and controlled by, and are alter-egos of, Balestriere in the Complaint. *Complaint*, paras. 28-30, 44, 56, 108, and 123. Assuming that these facts are true, then property of BF and/or BLF could be considered property of the Debtor or property of the estate.

The second issue is whether Plaintiff sufficiently pled in the Complaint that there were transfers, removal, destruction, or concealment of property of BF or BLF that were made with the intent to hinder, delay or defraud a creditor, in this case the Plaintiff and its related entity. As discussed below, acts and omissions occurring prior to the Final Award (defined *infra*) were considered by the arbitrator and no fraudulent or evil intent by BF nor Balestriere was found by the arbitrator. *See infra* at 6-7. Thus, the Court focuses on the acts and omissions alleged in the Complaint which occurred after the Final Award.

The Court notes that the Complaint alleges that BF has withdrawn from cases over which Pravati has a lien and the cases are not being appropriately managed to the detriment of Pravati. Complaint at para. 22. The Complaint alleges that BLF was formed to avoid the Judgment Debt and transfers of cases, invoices, accounts payable and other assets were transferred from BF to BLF without appropriate consideration. *Complaint*, paras. 31, 32, 35-39, 42, 43, and 45. The Complaint also alleges that BF withdrew from contingency fee cases, which rendered BF

3

insolvent and harmed Pravati. *Complaint*, paras. 48-55. The Complaint also alleges that Balestriere improperly used funds provided by Pravati to BF for personal use. *Complaint*, paras. 77-79. The Complaint further alleges that Balestriere and his alter-ego firms intentionally and willfully failed to pay Pravati. *Complaint*, paras. 88-113.

The specific allegations made in the Complaint with respect to Balestriere, BF and/or BLF's intent to hinder, delay or defraud Pravati which were not already decided by the arbitrator in the Final Award are as follows:

(a) Balestriere improperly caused BF to fraudulently transfer assets to BLF both before and after the Petition Date (para. 21);
(b) BF withdrew from many cases over which Pravati maintains a lien, which are not being appropriately managed, and may have been abandoned to the detriment of the underlying clients and recovery on same (paras. 22, 48 and 49);
(c) these actions are adversely impacting Pravati's rights to collect the debt (para. 23);
(d) formation of BLF was done in an attempt to avoid the debt and to permit Balestriere to fraudulently convey assets, including cases secured by Pravati, from BF to BLF, in an attempt to avoid Balestriere's obligations to pay the debt (paras. 31 and 45);
(e) Balestriere transferred cases, clients, invoices, accounts payable and other assets from BF to BLF both pre-petition and post-petition (paras. 32, 33 and 35);
(f) BLF did not pay any consideration for the assets and with actual intent to hinder, delay and defraud BF's and Balestriere's present and future creditors (paras. 36, 38, 39, 42 and 43);
(g) withdrawing from contingency cases rendered BF insolvent (para. 51 and 52);
(h) Balestriere and BF abandoned efforts in most cases to maintain or prove a charging lien further diminishing the value of the contingency cases to the detriment of Pravati (paras. 53 and 54);
(i) the disposal of the contingency cases was done with willful, malicious, and purposeful intent to cause harm to Pravati and to prevent, hinder, delay and defraud Pravati as a creditor of BF and Balestriere (para. 55);
(j) Balestriere caused his law firms to avoid making payments to Pravati (Para. 89);
(k) Balestriere caused BLF and BF to make payments to other parties with the intent to cause economic harm to Pravati (paras. 90, 91, 29, 93 and 95);
(l) Balestriere and his law firms settled cases and did not inform Pravati of the settlement or remit payment to Pravati (paras. 96-103); and
(m) Balestriere's concealment of such settlement funds, contingency fees, or other remuneration, was done maliciously and willfully and made with the purposeful intent of hindering, delaying or defrauding Pravati's rights as a creditor (paras. 105-111).

Many, though not all, of the alleged acts and omissions noted above took place after the Final Award, and thus, were not considered by the arbitrator in its ruling. Accordingly, based on

4

the Court's review of the Complaint, the Court finds that the facts pled in the Complaint are sufficient to state a cause of action under section 727(a)(2) for denial of a discharge.

**Count II: Denial of Discharge Under § 727(a)(3)**

With respect to Count II, Plaintiff alleges that Balestriere has concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information, including books, documents, records and papers, from which his financial condition or business transactions, including those of his alter-ego law firms, might be ascertained. Plaintiff seeks denial of a discharge under section 727(a)(3) of the Bankruptcy Code.

In the Complaint, Plaintiff points to Balestriere and his alter-ego law firms' failure to produce responsive documents or adequate privilege logs pursuant to Court-ordered subpoenas as support for the denial of discharge. While Plaintiff previously raised a dispute as to whether Balestriere, BF and BLF complied with this Court's 2004 orders dated December 11, 2024 [ECF No. 58] and March 5, 2025 [ECF Nos. 85, 86], no motion to compel Balestriere, BF or BLF to comply with the 2004 orders was ever filed by the Plaintiff (nor a motion seeking sanctions for non-compliance). Moreover, the Defendants produced a privilege log; although, it may have been produced late.

The standard for denial of discharge under section 727(a)(3) of the Bankruptcy Code is a relatively high standard. The debtor must have failed to keep or preserve books and records from which the debtor's financial condition or business transactions might be ascertained, and this failure must make it impossible to determine the debtor's true financial condition. *In re Gormally*, 550 B.R. 27, 49 (Bankr. S.D.N.Y. 2016). The facts alleged in the Complaint do not specifically demonstrate that Balestriere failed to keep or preserve books and records from which his financial condition may be ascertained. Moreover, since the commencement of the chapter 7 case, Balestriere has filed schedules and a statement of financial affairs, attended a 341 meeting, produced documents in response to the 2004 orders issued by this Court and has been deposed by Plaintiff.

As for business transactions by BF and BLF, the facts alleged in the Complaint do not sufficiently plead a basis for denial of discharge under section 727(a)(3). Paragraph 27 of the Complaint alleges that insufficient documents and information were produced in compliance with this Court's 2004 orders. However, there are no specific facts pled in the Complaint as to any particular books and records which should have been kept or preserved that Balestriere, BF or BLF failed to keep or preserve which related to business transactions.

The Court dismisses Count II because the facts, as pled in the Complaint, do not provide a sufficient basis for a claim for denial of a discharge under section 723(a)(3).

5

### Count III: Denial of Discharge Under § 727(a)(6)

In Count III of the Complaint, Plaintiff is seeking denial of a discharge under section 727(a)(6). Section 727(a)(6) provides for denial of discharge if the debtor refuses to obey any lawful order of the court, other than a lawful order to respond to a material question or to testify. Count III alleges that Balestriere and his alter-ego funds violated an order of this Court dated March 5, 2025 [ECF No. 85]. Paragraph 8 of the order in question provides: "[c]onsistent with the Court's direction at the Hearing, the Debtor and/or BF shall turn over to Debtor's counsel any funds paid in connection with any cases or Legal Matters in which Pravati holds a lien, which funds shall be held in Debtor's counsel's escrow account pending a determination from the Court as to the rights of any interested parties in such funds."

The escrow account in question is an account of Barclay Damon L.L.P. ("BD"). There are no facts in the Complaint specifically alleging that BD has violated the order and even if there were, BD is not Balestriere or an alter-ego of Balestriere. There are no specific facts alleged in the Complaint indicating that, since March 5, 2025, funds have not been turned over to the Debtor's counsel by BF or Balestriere with respect to cases or Legal Matters in which Pravati holds a lien, or that funds have been removed or disbursed from BD's escrow account. Neither Balestriere nor any of the other Defendants could have access to BD's escrow account and the Complaint does not allege that they do. None of the Defendants have control over the funds in the BD escrow account once the funds are deposited in it. Accordingly, Count III is dismissed for failure to state a viable cause of action.

### Counts IV and V: Denial of Discharge Under § 523(a)(2)

Counts IV, V and VI are counts brought under section 523(a) of the Bankruptcy Code objecting to the discharge of debt, specifically the final award rendered by the arbitrator in the amount of $16,153,364,93 (the "Final Award") for damages in favor of Pravati Investment Fund IV, LP ("PIF")[3] and against Balestriere and BF for breach of contract under the Omnibus Legal Funding Contract and Security Agreement executed on September 17, 2020 (the "2020 Agreement") [Exhibit K to MTD]. The arbitrator issued the Final Award after discovery and an evidentiary hearing. The Arizona state court subsequently entered a judgment against BF based upon the Final Award.[4]

In the Final Award, the arbitrator specifically found that PIF had not proven any of its claims other than for breach of contract. More specifically, the arbitrator rejected allegations that BF had committed fraud by inducing PIF to fund millions of dollars for meritless cases due to its duty to disclose the *Counsel Financial* litigation, its "theft" of client funds in *Bernstein*, the lack of merit to *Reply All*, and ongoing acts of malfeasance. *Final Award* at 35-36. The Court found

---

[3] Plaintiff is the manager of PIF and was a party in the arbitration. When the Final Award uses Pravati, it means Plaintiff and PIF.
[4] Such judgment was domesticated in New York County on June 11, 2025.

that PIF had not proven by clear and convincing evidence that BF or Balestriere committed fraud by inducement or omission, with respect to the identified matters.[5] *Id.* The arbitrator also found that PIF had failed to prove a breach of implied covenant of good faith and fair dealing, conversion, or unjust enrichment (*id.* at 36-38), and that PIF was not entitled to punitive damages because "it has not prevailed on its tort claims and it has not proved that BF or [Balestriere] acted with the requisite evil mind to support an award for punitive damages." *Id.* at 38-39.

The bases for the arbitrator's breach of contract finding are set forth on pages 29-32 of the Final Award. The arbitrator found that BF defaulted under clauses 2(e)(i) and 2(e)(xiv) with respect to *Bernstein* by not disclosing in its August 2021 case update that BF would forfeit its $8.4 million success fee because Balestriere had improperly and deceitfully transferred funds from BF's trust account to pay fees owed to BF, and that BF defaulted under clauses 2(e)(xiii) and 2(e)(xiv) and clause 6 by not reporting the District Court's affirmation of the arbitration award. *Id.* at 29-30. The arbitrator further found that BF defaulted under clauses 2(e)(xiv) and 15 because it inaccurately represented that the *Reply All* case was meritorious, and under clauses 2(e)(i), 2(e)(xiv) and 6 by not reporting the April 2021 fee award. With respect to *Prudential*, the arbitrator found that BF defaulted under clauses 2(e)(i), 2(e)(xiii), 2(e)(xiv) and 6 by not disclosing or reporting the January 2022 dismissal with prejudice.

The basis for the debt at issue that Pravati has against Balestriere is the Final Award and the guarantee signed by Balestriere. To the extent that the arbitrator considered claims asserted by PIF in the arbitration and rejected them, and since the Arizona state court has entered a judgment affirming the Final Award, such claims may not be relitigated before this Court in the context of section 523(a) of the Bankruptcy Code on the basis of collateral estoppel. *See Grogan v. Garner*, 498 U.S. 279, 279-80 (confirming Bankruptcy Court's holding debt from fraud judgment non-dischargeable under section 523(a) based on underlying record containing proof of elements of fraud); *In re Parella*, 622 B.R. 559, 567 (Bankr. D. Conn. Oct. 28, 2020) ("[b]ecause the State Court Judgment with respect to the intentional misrepresentation claim resolved all issues necessary to establish nondischargeability under section 523(a)(2)(A), collateral estoppel applies.").

Plaintiff argues that Count IV should not be dismissed on the basis that Balestriere made a false representation with respect to the 2020 Agreement. In Count IV of the Complaint, Plaintiff asserts that false representations were made to Pravati by overvaluing several cases in order to induce Pravati to provide funding, and that Balestriere made false representations about the *Reply All* case which Pravati relied upon with respect to providing litigation funding. *Complaint*, paras. 146-50. But, in the Final Award, the arbitrator held that PIF failed to prove fraud in inducement or omission by Balestriere. *See supra* at 7. Moreover, the arbitrator held

---

[5] The arbitrator noted that an element of fraudulent inducement under Arizona law is the speaker's making a false statement and knowing that it is false. Additionally, a plaintiff must show active, intentional concealment of a material fact by the defendant to prove fraudulent inducement. The arbitrator held that neither was proven by PIF. *Final Award* at 35-36.

7

that its conclusion did not assume that BF's lawyers know that the *Reply All* case lacked merit when the 2020 Agreement was entered, but rather that the representation was factually inaccurate as established by the U.S. District Court's determination in April 2021 that the case was meritless from the outset. *Final Award* at 30-31.

In order for a representation to be a false representation for purposes of section 523(a)(2)(A) of the Bankruptcy Code, a defendant (i) must have made a false or misleading statement (ii) with the intent to deceive, and (iii) in order for the plaintiffs to turn over money or property to the defendants. *See In re Hambley*, 329 B.R. 382, 396-397 (Bankr. E.D.N.Y. 2005); Black's Law Dictionary at p. 619 (7th ed.1999). The arbitrator certainly held that there were misrepresentations and omissions made by BF and Balestriere. *See supra* at 7. But, after considering all of the conduct alleged to have occurred by BF and Balestriere prior to the issuance of the Final Award, the arbitrator specifically held that PIF did not prove intent to deceive in order to induce PIF to turn over money to the Defendants. The same underlying conduct rejected by the arbitrator as insufficient to establish intent in the Final Award is alleged in the facts pled in the Complaint. Accordingly, the Court dismisses Count IV of the Complaint. The Court also dismisses Count V of the Complaint with respect to the denial of discharge for the debt under section 523(a)(2)(B) based upon the same findings of the arbitrator in the Final Award.[6]

**Denial of Discharge Under § 523(a)(6)**

With respect to Count VI, Plaintiff seeks denial of discharge of the debt under section 523(a)(6) of the Bankruptcy Code. The Court dismisses Count VI for several reasons. First, some of the acts alleged in Count VI took place post-petition. The Court could not locate support for granting a denial of discharge under this section of the Bankruptcy Code based upon acts which took place post-petition in the context of a chapter 7 case.[7] Second, with respect to the alleged acts and omissions that took place prior to the Final Award, the findings of the arbitrator support dismissal. The arbitrator specifically held that there were no valid tort claims that PIF had against BF and Balestriere. *See supra* at 6-7. The arbitrator only found breach of contract claims. "Section 523(a)(6) generally applies to torts and not to contracts." Collier on Bankruptcy, 523.12 [1]. Third, willful requires that a deliberate or intentional injury must be proven, not merely a deliberate or intentional act that leads to injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998). The arbitrator found no conversion of property. *See supra* at 6-7. The arbitrator held that there was no proven fraud in inducement or omission. *See supra* at 7 n.5. BF and Balestriere's conduct with respect to the 2020 Agreement which resulted in the Final Award,

---

[6] Section 523(a)(2)(B) provides for a denial of discharge of a debt if it was obtained by the use of a statement in writing (i) that is materially false, (ii) respecting the debtor's or an insider's financial condition, (iii) on which the creditor to whom the debtor is liable for such money, property, services or credit reasonably relied, and (iv) that the debtor caused to be made or published with intent to deceive.

[7] In the context of a chapter 13 and subchapter V cases, there is some supporting case law because of the requirements to obtain a discharge and the timing of discharge.

as pled in the Complaint, are insufficient facts to support a finding of deliberate or intentional injury.

## **HOLDING**

The MTD is granted in part and denied in part. Counts II through VII of the Complaint are hereby dismissed.

Dated: November 10, 2025
      NEW YORK, NEW YORK

                                              */s/ Lisa G. Beckerman*
                                              HONORABLE LISA G. BECKERMAN
                                              UNITED STATES BANKRUPTCY JUDGE